Akridge v. Alfa Mutual Insurance Company Please everyone take your time getting settled And then Mr. Sawyer whenever you are ready You can do this, it's not going to hurt In this case it's not going to hurt Good afternoon, May I please report? I am David Sawyer, I represent Ms. Jennifer Akridge And this is her second appointment for the 11th Circuit in the last several years Our appeal on this occasion again comes from a summary judgment presented by the District Court But it also involves the same discovery issue that was addressed by the 11th Circuit in our initial appeal Time and time again, Ms. Akridge and her counsel attempted to obtain discovery from Alfa and its individuals Its senior management, the people who made the decisions to terminate Ms. Akridge We came to the court and the court decided that we were entitled to the 30B6 deponent Who knew the information we had reported Did we say you are entitled to a 30B6 deponent who knew that information? Or did we say that you are entitled to the deposition of that particular person? Because it was likely that he and his individual role had knowledge about what had happened I think the court said both I think the court made specific reference to our 30B6 request That the court had ruled on on two separate occasions And stated that that 30B6 representative should come forth And produce the documents that the District Court had ordered to be produced The court's appeal order doesn't say anything about 30B6 It just rules on that he is required to be deposed And if you listen to the oral argument tape, which I did It was all about personal knowledge Because you said White had been the 30B6 You deposed her twice as 30B6 And as I looked in the pleadings, there was never a requirement trying to get him as 30B6 In fact, the whole first appeal was about his personal knowledge Not about the company's policies and procedures as a 30B6 So I think you've got, there's nothing in the opinion that uses the word 30B6 It's about his personal knowledge It's just like deposing any witness I want to depose this witness They wouldn't let you depose him Said he didn't have any knowledge And all y'all argue about in the oral argument and in the briefs Because I wasn't on the other appeal It was all about getting him individually what he knew about this particular termination Or medical costs and all of that So, why is that not so? What can you point to me that makes it anything other than it was his personal deposition? Well, Your Honor, long ago, back in 2018 When we were attempting to obtain the proper 30B6 representative The district court itself, the previous judge in the district court Had entered two separate orders We've read them, Judge Baldry's orders I understand, and then you had a different district court judge I got that history No, the court ordered at that time that whoever Alpha intended to produce As their 30B6 representative Should produce three separate categories of information And three separate categories of documents And that's what we have attempted to obtain for six years You had two depositions in this fight, right? Correct, yes, Your Honor Okay, and then you came up here on appeal Complaining about Mr. Farris And then you got his deposition, correct? We got his deposition without anything that was required to be produced by the district court's prior orders He came empty handed But he came with what he had up here, right? I mean, having sat on that panel I remember the argument was In his role, he probably, likely, perhaps Knew something specific that the company That their 30B6 representative wouldn't know I mean, the opinion says As the executive vice president of human resources Decision maker for Alpha's IRISA employee benefit plan And the decision contact for Alpha's Blue Cross Blue Shield insurance plan We find it difficult to believe that Farris had no information Touching on acreage's medical expenses and termination The roles that Farris held at Alpha And the corresponding access to medical insurance information they entail Are relevant and thus sufficient to make his testimony discoverable Because if he testifies as a 30B6 representative It's not his testimony, it's the company's testimony Which is what we've sought since the beginning, Your Honor And when we deposed Mr. Farris His answers to the majority of the issues and topics That we had asked for and that the court had ordered twice His answers were, I don't know I don't know And we've heard that for six years They produced not one single document About why they had to reorganize And fire one employee Well, that goes to the merits of your case That doesn't go to what his knowledge is About what happened And the argument you said he passed around the hall all the time He was involved, he supervised the three decision makers So he must know something And so I think you need to move on to the merits of your case We understand this one I think you better use your time On the rest of it Thank you, Your Honor Let me just restate that The merits of the case Present a substantial burden on the plaintiff And in meeting that burden We need documents, we need discovery We need somebody to tell us why Why they fired this woman They've not produced one single document Not an inter-office memo Well, that goes to the weight of what they said They've said why they fired her They claim and assert Under oath, it's because her job became automated We know what they say The question is whether there's pretext Or some other comparator Or some other reason to raise an issue of fact Isn't that what we should decide? I would request that, Your Honor Yes, ma'am There are numerous factors Involved in what we could discover One is that no one else was terminated Everyone else was transferred to another job Everyone else kept their employment Everyone kept their same salary Ms. Akridge had been there for 25 years I thought there were 12 employees In the underwriting department That were terminated And two got transferred We have no records of that, Your Honor I thought that was the testimony in the case You can prove things by testimony You can prove it by documents I thought it was 12 people got terminated We've never seen those documents, Your Honor Did anybody testify to that? That's what they put in their brief Did anybody testify to it? I'm not aware of that Okay They produced not one document By which Ms. Akridge is alleged To not be needed anymore at Alpha For her own I mean, she's got 25 years of experience They could have transferred her Like they did the other employees But just to be clear from the record as well Ms. Akridge was diagnosed with MS Several years into her employment And was able to stay there And receive medical benefits for years Before what appears to be A structure, restructuring of the organization Would you agree that that's pretty relevant In terms of not proving your case Of some kind of ADA violation Given that fact? I believe that's why we're here We've attempted to prove what Alpha did And in reorganizing or restructuring The size of their company They don't have a memo, a document Or anything explaining why They wanted to terminate Ms. Akridge And if it was based on reorganization If it was based on something That they needed to do differently Why could they not just produce that document For us to at least have to argue against Or to present to the court? There is nothing Nothing That they've ever presented That indicates that They were reorganizing the corporation That they were transferring any employees That they were doing anything But to Judge Hall's point They did offer testimony along those lines And if you thought that that testimony Was false for some reason You certainly could have deposed The people who they said were terminated And you say were not We deposed everyone that they would allow Or to provide up to their Human resources director But again nobody had an answer They can't explain why Nobody explained why they did what they did Well and so this is my question Do they have to explain why they did what they did? They just need to legally Explain that it wasn't based on her disability And that's all the information they need to provide  So isn't that the end of the inquiry? Well I believe that would let any employer Hide anything they wanted to hide And just make whatever statements they wanted to Anytime they wanted to terminate someone And they could say no It was not because of their disability And you can't find a single document That says why we fired her So you have to just listen to what we say Can I ask you to make sure I understood her job She mainly One of the important things she did She fielded calls from agents Across the company or from somewhere To answer questions Is that correct? She trained agents She traveled And met with agents across the southeast In three separate states She offered routine training to new agents Every time someone would be hired They would deal with Ms. Akridge And learning what their jobs were So she had a training capacity But then they called her for certain information That she would somehow find out about Before the underwriting of the automobile policy She did What kind of information did they ask her for? Would she then find out for them? She would find out One, what type of policies That the agent should be selling How much the premium that should be charged For that type of insurance policy The year before they fired her She saved the company $2 million I'm trying to understand her job I'm trying to explain that she assisted every agent That Alpha would hire And they say part of the reason why They no longer needed her I don't know if it's true or false I'm trying to understand what the job was And what they said about it They said a lot of that had been automated now And they didn't need her to go around training people They have online programs They have other automation That then facilitated her job And so why is that not accurate? I don't know whether it is or not Well, that's what they say But I want you to tell me why that's not accurate Well, one reason is because I've not seen a single document that says that Okay Alpha doesn't have a single piece of document Or any memo that says We're going to eliminate her job duties And we don't need her anymore The problem And I can understand, of course I think any termination is hurtful And I can understand, frankly Extreme suspicion Given these facts But the problem is that We don't have any evidence That this was the reason And unless evidence becomes available Then it becomes really hard When a reason is offered Whether in documents or testimony It becomes really hard to say But that just seems hard to believe Since she had high medical costs Well, I think the direct evidence of discrimination Comes after they fired her And Ms. Akeridge went on COBRA And had to pay for insurance out of her own pocket And Alpha self-insured And what did they do? They decided not to allow her medication To be an approved medication Under her COBRA policy I thought that was Blue Cross Blue Shield Blue Cross Blue Shield was who administered the policy I know, but they administer and do that all the time Well, as was stated in the brief Ms. Akeridge called Blue Cross And Blue Cross told her Well, you need to call Alpha That was their decision They're the ones who terminated her job After they fired her After they terminated her medication We know why they fired her And everyone else During that two year span They may say they fired 12 people But everyone in the underwriting department Everyone in the property department Kept their jobs The lady who did the same thing Across the hall for property She kept her job She's still there And everyone else Who was transferred to another job They're still there Thank you Mr. Sawyer I believe we've got your argument You will retain your five minutes for rebuttal Ms. Madalena I hope I'm saying that properly You are Great Thank you very much Good afternoon As you noted My name is Yvonne Madalena I'm an attorney with Jackson Lewis And together with Lindley Palmer here We represent the appellee in this matter Alpha Mutual Insurance Company Counselor This is The plaintiff hasn't been able to present evidence In support of her claim That she was dismissed or terminated Based on her disability But it is very suspicious That you all Alpha receives a summary From Blue Cross Blue Shield Of insurance costs Even if it doesn't necessarily have the names And you all weren't able to present A single person Who could speak to how those documents are handled Who reviews them Who approves them How they're processed The timeline And how they're kept Did you all present anything Related to those questions? Yes your honor Actually we Presented Scott Forrest In his personal capacity He spoke to how those documents And how that information is maintained He testified And you can look on He testified in his deposition That Blue Cross Blue Shield Is the one that Maintains individual healthcare costs That Alpha itself May have summaries Of changes in the policy Alpha itself may have reports As to what the total cost is But that's for every employee out there There's nothing in the record And Scott Forrest spoke to this That indicates that Alpha Has any information On what a particular Specific employee's health costs are And that makes the difference Because not only did Scott Forrest Not know what Ms. Akeridge's Specific healthcare costs were More importantly The three decision makers did not All three of the decision makers Were deposed All three of the decision makers Were very clear That they didn't know the health costs Of Ms. Akeridge They didn't know the health costs Indeed of any employee At Alpha And they didn't know how the health Insurance costs Insurance system worked Or who managed anything But some of them I believe Even Mr. Forrest knew That Ms. Akeridge had MS though Correct? Yes your honor And it would be fair to say That generally that is an expensive Health related cost That is true your honor That can be something that's assumed They did know that she had MS But again What they're alleging Is that in the elimination Of this single position That those three decision makers Took into account Her healthcare costs Well there were other people There that also had healthcare costs They identified at one point In their brief Five individuals That they said should be comparators Among those five Those individuals had healthcare costs One had a pregnancy One had healthcare problems For their child They didn't know the dollar amounts of those The same way that they don't know the dollar amounts For Ms. Akeridge That didn't matter That wasn't what they were considering When they were making the decision To eliminate a position They were looking at the fact That whether it's fair Or unfair Or she didn't like it As Judge Grant noticed It's a very painful decision To let someone go But they looked at a case Where they had had an automated system Coming in in 2015 and 2016 They were looking at Reducing the cost Of where they could That's not an illegal thing To reduce costs at a company That's trying to make a profit For its shareholders or for its members Can you refer us to Places in Deposition testimony Where the Non-illegal reason For her termination was discussed Yes In the deposition of Tommy Koshat Pages 30-34 Pages 85-86 Page 113 In the deposition of Beth Chancey Pages 55-58 In the deposition of Mr. Plaster Who was the direct supervisor 22-23 27-31 43-46 In all of that testimony Those are the three principal decision makers And they testify in there That what they looked at was The fact that the majority of her Activities The majority of her duties Were going to be automated Or had already been automated And what were those duties And what did automation do I couldn't figure that out Well I'm surprised you didn't figure it out Because you were asking exactly that question One of the duties that she had Is providing information To agents out in the field Providing information on pricing Or policies All of that went into the Godwire system And the intent of that Godwire system Was to make sure that anyone Out there, whether it's the district manager Or the agents themselves They could all go into this one Centralized system And get that information And the plaintiff herself Admitted that The majority of her duties Were duties that would be automated Where will I find A record of what her duties were About information to agents And how it was automated Who testified about that Explaining the automation Of her position Those would probably be on the same pages I just gave you, your honor Tommy Kosher and Chancey and Plaster I need to repeat those pages But other than that, is that it Probably There were There were Testimony of Plaster And of Chancey As well about The differences In her duties Compared to the comparator duties And those were Cited on Page 20 of the District Court's opinion Which is document 209 The district court there outlined The specific testimony There, but both Kosher and Did she travel to go Visit agents and train Them or was she Mainly fielding calls, I didn't know about Visiting people, I thought it was fielding Calls. She fielded calls She did do training, your honor, but a lot of that Training also has been I wouldn't call it automated, but the Company has moved more toward E-learning tools And webinar tools And so a lot of that training is more Centralized now and they can go on And do that training, and that training Is interactive, it's like a lot of the Training that we May do for CLEs or other things It has interactive portions To it, question and answer portions to it I will not make any Observations about how carefully Lawyers may listen To electronic CLEs And wonder whether That's a very effective training method for any Line of work We're not here to discuss that But The point of this Of the district court's opinion Was that There was not a But looking at it first under a McDonald-Douglas standard I want to ask one more question about Evidence, I do find it surprising That there Appears to be literally no Paperwork about this decision making Do you have any explanation for that Aspect of things, I mean in a modern Area you would think there would be at a minimum Emails or something like that Yes, but certain companies You know, it's not required that they Have that documentation and we do have In the record the testimony again of Scott Forrest And Scott Forrest says That It's not unusual for the company to have No documents that reflected changes Or plans including restructuring And he said that on page 176 and 177 Of his deposition because they asked Him that direct question and he said for that Company, that's not unusual That they would not have documentation for that Doesn't that seem odd that they don't have documentation On that yet they're moving other Things to electronic Automated sources Whether it's unusual or Not, that is the Evidence that's before the court And it's the uncontroverted evidence That's before the court The testimony was under oath, it was Questioned, you know The questions were provided and answered By counsel for the plaintiff So They're, you know, whether There's documentation or not, there's The clear testimony under oath of the Three decision makers, there's The clear testimony under oath of The corporate representative Susie White Who was deposed twice And then there's the testimony again of Scott Forrest himself in his individual Capacity So when the district Court went into the McDonnell Douglas analysis, you know, we've Already discussed the comparators And so she ruled that The comparators were not similarly Situated She also noted that the Position's never been replaced This was a true elimination Of a job There has been no one else that went into that job The plaintiff was not able and Could not say that she was replaced In that position And then beyond that There was a legitimate Non-discriminatory business reason For this decision and that Was that reduction in force Y'all had asked earlier While my opposing Counsel was up here about the numbers And there's clear information In the record, there wasn't Just, she was not the only One who was let go, she was the only One whose position was eliminated At that time But when the guidewire System went in in 2015 There were two people Who were retired and not Service reps whose positions were eliminated The position of the plaintiff Was then eliminated Her supervisor, Mr. Plaster Who was one of the people that were the Decision makers, when he retired, he was Not replaced, so there were But it sounds like other people Retired and She was terminated, why couldn't Why couldn't the court see that As an important difference? The testimony is that there weren't other Positions for her There They spoke in the Depositions of You know, they went to human resources To Susie White There weren't other positions And the plaintiff didn't apply for other positions The only effort she made Was to go to one individual and say Do you have any positions for me? And his response was No, I do not I already have two people that I've taken in In this restructuring And the company doesn't have an obligation To find other positions For her They made some attempts, but there weren't Positions that were open That's the uncontroverted evidence There, and she herself Admits she didn't make any other attempts She made that one Meeting with one person And that was it One thing I was confused about in your brief On page 37 you assert That a convincing mosaic Cannot be used for An ADA claim The analysis there seems to Mix up convincing mosaic With mixed motive Can you I'm not sure I understand what you're getting at there Well, I apologize if it was unclear I will say a convincing mosaic Can be used In an ADA discrimination case Okay, good Mixed motive cannot be used in an ADA discrimination case A mixed motive Analysis requires A motivating factor analysis And because the ADA requires A 5-4 causation Then the mixed motive is inappropriate So Let's say that Ms. Akeridge had Evidence that Her Her position was She was like a, both because of Her, the automation of her job And because Of her Of her medical treatment costs Under a mixed motive analysis Maybe that would be, maybe she would have A claim, but you're saying For the ADA, she needs to have She needs to have Just the one, just the one motive Is that right? What the case law Has said, is that for but-for Analysis It is, but for the disability Her job would not have been Eliminated, and the testimony Is her job would have been eliminated They were, because of the automation Because of the remaining duties that she Had, they could be transferred to someone else But Because of those factors That's why her position Was eliminated, so she can't establish But for her disability Her job would not have been Eliminated, and so That's where, you know, that's Where she, the report found That she could not establish that Requisite causation Under both McDonnell-Douglas, and then Also There's also the, you mentioned the convincing Mosaic of circumstantial evidence There's been a lot of panel opinions Which both of y'all have been on Recently And, you know, the convincing mosaic Also has instances That are outlined by the case Law that she has not met So, one of them being that She is treated differently Than a comparator, we've already Discussed those in the McDonnell-Douglas part Well, I will say this, for the We also have cases that say that one Important reason that we have A convincing mosaic test is because Sometimes there is not a comparator So, I don't think a comparator Is required for the Convincing mosaic, right? It's not required, it's one of the It's one of the items that are listed as Evidence that you could show as a convincing mosaic Others being the evidence of Suspicious timing As was noted earlier She's had MS since 1993 As I noted Every, they knew that she had MS, there's no suspicious timing Here that would That would go to a convincing mosaic Proof, there's no ambiguous Statements or any other information In which you can infer Unlawful intent, the decision makers HR, Scott Forrest There were no, there's no direct Evidence of any statements that any of them Made, and there's no One of his arguments is there's absolutely No documentation, they can All say and make up a story But there's nothing to corroborate This after the fact story So That's one of his major points That there's absolutely not a Shred of evidence Documentary, email As Judge Grant said, any type of document That it all Talks about eliminating the position Because of restructuring, automation Or whatever, and you can say Well we always do that, we often Don't put it in writing, and so They say that's highly suspicious And just speaking for myself That seems quite unusual to me Too, that there's not a shred Of documentation Of reference to anything Until after the fact So help me with that Well whether there's documentation Or not, your honor There's still evidence Whether it's documentary I said that earlier, testimony is obviously Elements of evidence But what I'm talking about is In this type of a long term employee There's not anything She's worked for us for a while, we hate to do this But she's going to be automated, what can we Do about it, I mean there's just Nothing here, at all Internally Discussing Somebody's worked for you for 23 years That all of a sudden It's been automated, goodbye And walked out the door Yes your honor Why is that not unusual Given the overall context here  Of all kinds Of ways This seems Arguably suspicious And it's inherently Suspicious, it's not a piece A document, that's his argument Yes your honor, I'm over time You can answer That goes to I would say your honor, that that goes to your analysis Of pretext And you're looking at, and pretext Or, and pretext is one of the elements Also for Showing the Motivation, the Condensing mosaic Sorry, the words flew out of my head Both of those The convincing mosaic and McDonnell Douglas Rely on pretext, and what the cases Tell us about pretext is That reason that we're providing That reduction in force, the elimination Of her position, it has to be Unworthy of credence And so, whether there's Documents or not, there's the Testimony of three decision Makers, who were very clear Repeatedly, that they did Not know her healthcare costs They didn't consider her Healthcare costs, and the basis for Why her position was being eliminated I think I have it, thank you And my quick question Just goes back to the mixed motive standard In light of the 2008 amendments To the ADA, it is still your position That A mixed motive is not A standard by which we should Have evaluated Ms. Akeridge's Claim That would be your position, Your Honor There have been Not en banc decisions But there are Decisions from the 11th circuit that Have looked at that, and that Again, goes to the wording, the mixed motive Analysis arises Under Title VII Cases, and Those Title VII cases do not Have that but-for causation Requirement that disability Cases, or age Cases have, because Of that requirement on the causation You can't have a mixed motive Analysis, a mixed motive analysis Is one of these It just has to be a motivating factor And a motivating factor does Not fall in line with A but-for This disability that Act would not have occurred Thank you very much Mr. Sawyer, you've still got your Five minutes for rebuttal Thank you again May it please the court Let me make Several points First of all, this automated System that is made reference To time and again by Alpha It started back in 1989 So there were jobs That were not Necessarily eliminated but were Transferred to different people Different jobs were Automated But from the testimony That's before the court, the majority Of people who lost Their job because their Jobs were being automated Were not fired, they were not sent Home, they were transferred to another Position within the company And the evidence reveals that Second of all Alpha Continually makes reference to Decision makers, those being The people that she worked with on a daily Basis. The testimony Before the court reveals That any time a position Was eliminated or someone was Terminated, that position came From what was called senior leadership At Alpha. That included the President, that included Scott Forrest The HR director Those decisions were made by senior leadership Not by the decision makers Senior leadership Was attempting to cut Medical costs. They had given Direction to that They had told Employees that they needed to watch What their medical costs were They needed to not go to the doctor Unless they really needed to That comment was made Two years ago before her actual Termination. Do you agree With the company that That timeline is too long To have it connected to the For some issue or argument Of retaliation it may be But it was the policy. Alpha was Attempting to cut costs And again While some of these individuals who did have Medical costs, just like Ms. Akeridge, but not maybe as much They were not dismissed They were transferred. Their jobs If they were automated were transferred to a different Position within Alpha I was curious about This testimony Her medical costs were $10,000 a month But actually if you look at the records The records here On medical costs don't show that They show not $10,000 a month At most $10,000 a year Have I got that wrong? I know you all keep saying $10,000 a month But actually when you look For the records that are in evidence  It's at most $10,000 a year At least in 2014, 2015, 2016 Is that wrong? It's incorrect The costs were approximately $10,000 Each month Other than her testimony To that effect Is there any documents That support that in this record? Alpha has produced none Okay, so there are no documents you say about that I think there are some Blue Cross records In there that do show something different But you didn't put any Records about her health care costs You just did her testimony We presented records of what she paid Out of pocket We did not present records of what Alpha paid What did she pay out of pocket? She did not pay Probably more than Several hundred dollars each month Okay But the cost of the prescription Was approximately $10,000 each month And it was paid directly by Alpha Did Alpha ever contest Her statements about how much that Has been cost? They have not They have never produced anything But they have not contested it And once again Even Ms. Akeridge's Superior The ones who work with her on a day to day basis In fact Mr. Plaster Her immediate supervisor Acknowledged that during his entire career In Alpha No one under his direction had been terminated Or eliminated If somebody's job had been changed Or if their job had been automated That employee went somewhere else in the company They were not fired Did you have evidence That the company found that person  The terminated person Looking around And trying to find a new Position within the company We had testimony From her superior that that was The practice and everyone else Who worked in her In her department When her job was Automated in 2016 Everyone Kept their job or was transferred To another department and paid the same Only one person was Eliminated in 2016 And again Guidewire had been around For Since 1989 It was not something created the year Before they fired her They said two field service workers were fired In 2016 Is that wrong Those were field service workers Not individuals that worked At Alpha's home office In the underwriting department But they were hiring people They were hiring new agents How about the field service workers Did work in underwriting Maybe not in the home office They were in underwriting To my knowledge they were But again These jobs That were automated No one got Sent home Due to this automation Except Ms. Akers And again Let's go back to what happened after they fired her When Ms. Akers decided to Get her own insurance I think you're about a minute over So if you would close out I think this is the smoking gun evidence Of what we One document we do have And that's the document where they eliminated Alpha Eliminated her prescription medication Where is that in the record Do you have a record cite for us It's cited specifically As Document 194 I'm sorry But it's the one document that Is generated by Blue Cross Blue Shield where it says In 2017 Your medication Has been terminated by Blue Cross And Ms. Akers Had to call Alpha And they gave her no explanation Other than it had been cancelled Thank you Mr. Solari We appreciate your argument